# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

## CASE NO.:


CARNIVAL CORPORATION, d/b/a CARNIVAL
CRUISE LINE; NORWEGIAN CRUISE LINE
HOLDINGS LTD.; MSC CRUISES (USA) INC.;
MSC CRUISES SA CO.; MSC CRUISES S.A.; AND
ROYAL CARIBBEAN CRUISES LTD.;

      Petitioners,

v.

JAVIER GARCIA-BENGOCHEA,

      Respondent.

_____/


## MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM NON-PARTY SUBPOENA RESPONDENT JAVIER GARCIA-BENGOCHEA

Pursuant to Federal Rule of Civil Procedure 45, Norwegian Cruise Line Holdings Ltd. ("Norwegian"); Carnival Corporation, d/b/a Carnival Cruise Line ("Carnival"); MSC Cruises (USA) Inc., MSC Cruises SA Co., and MSC Cruises S.A. (collectively, "MSC"); and Royal Caribbean Cruises Ltd. ("Royal Caribbean") (all together, "Petitioners"), through undersigned counsel, move to compel non-party subpoena respondent Javier Garcia-Bengochea ("Dr. Garcia-Bengochea") to produce documents pursuant to Petitioners' respective subpoenas issued from the United States District Court for the Southern District of Florida in *Havana Docks Corp. v. Norwegian Cruise Line Holdings Ltd.*, No. 19-cv-23591 (S.D. Fla. Sept. 1, 2020), dated January 7, 2021; *Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724 (S.D. Fla. Sept. 14, 2020), dated December 21, 2020; *Havana Docks Corp. v. MSC Cruises (USA) Inc., et al.*, No. 19-cv-23588 (S.D. Fla. Sept. 8, 2020), dated December 11, 2020; and *Havana Docks Corp. v. Royal Caribbean Cruises Ltd.*, No. 19-cv-23590 (S.D. Fla. Apr. 17, 2020), dated January 20, 2021 (collectively, the "Subpoenas"), attached as Composite Ex. A.  In support of this Motion, Petitioners state as follows:

## INTRODUCTION

This Motion arises out of four civil actions pending in the Southern District of Florida.  In those actions, Havana Docks Corporation ("HDC") has sued Petitioners for alleged "trafficking" under Title III of the Helms-Burton Act ("Title III") as a result of Petitioners' sailings to Havana, Cuba, that embarked and disembarked passengers at what HDC alleges to be its confiscated port property.  Petitioners have learned via discovery in these underlying cases that HDC and Dr. Garcia-Bengochea have worked closely to investigate Petitioners' alleged activities in Cuba, as well as to advocate politically for some kind of legal enforcement against the same.  In fact, Dr. Garcia-

2

Bengochea filed lawsuits of his own against three of the Petitioners for alleged "trafficking" under Title III as a result of those three Petitioners' sailings to Santiago de Cuba, Cuba that embarked and disembarked passengers at what Dr. Garcia-Bengochea alleges to be his confiscated port property.[1]

For this reason and others, Petitioners each served a Federal Rule of Civil Procedure 45 subpoena for documents on non-party Dr. Garcia-Bengochea, who resides and works in Jacksonville, Florida.  Dr. Garcia-Bengochea's counsel accepted service of the Subpoenas in December 2020 and January 2021.  The Subpoenas consist of substantially similar requests for documents and communications regarding the claim and defenses at issue in the underlying actions.  As explained below, these documents and communications are relevant to HDC's Title III trafficking claim and Petitioners' defenses, including the outcome of Dr. Garcia-Bengochea's efforts to have the United States Government find that the very conduct at issue in the underlying actions was unlawful under the Helms-Burton Act.  While Dr. Garcia-Bengochea produced some documents in response to the Subpoenas – confirming that he possesses responsive documents and communications – his production was deficient. To date, he has served no written objections to any of the four Subpoenas, but instead has unilaterally elected to produce only a single 907-page PDF file that consists of emails and documents and that is entirely devoid of any metadata.

To ease the burden of production, Petitioners coordinated to make similar requests and worked with Dr. Garcia-Bengochea's former counsel to identify a narrow

---

[1]      *Garcia-Bengochea v. Carnival Corp.*, No. 19-cv-21725 (S.D. Fla. July 10, 2020), *on appeal*, 20-12960 (11th Cir. 2020); *Garcia-Bengochea v. Norwegian Cruise Line Holdings Ltd.*, No. 19-cv-25393 (S.D. Fla. Sept. 1, 2020) (ordering all case deadlines be stayed and the case closed for statistical and administrative purposes pending the *Carnival* appeal); and *Garcia-Bengochea v. Royal Caribbean Cruises Ltd.*, No. 19-cv-23592 (S.D. Fla. Oct. 15, 2020), *on appeal*, 20-14521 (11th Cir. 2020).

set of suggested custodians, time periods, and search terms.  Following the deficient productions and notification that Dr. Garcia-Bengochea was no longer going to be represented by the counsel who served the production on Petitioners (which notification came the same day as the productions), Petitioners followed-up with Dr. Garcia-Bengochea directly.   Dr. Garcia-Bengochea either responded and simply refused, without asserting any valid basis, to fully and adequately respond to the Subpoenas or, in the cases of two of the cruise lines, did not respond at all.

Dr. Garcia-Bengochea has waived any objections to complying with the Subpoenas and, in any event, the Subpoenas seek relevant documents that are critical to multiple of the Petitioners' defenses and the Petitioners have minimized the burden on Dr. Garcia-Bengochea to comply.  For all these reasons, the Court should grant Petitioners' Motion and compel Dr. Garcia-Bengochea to fully comply with the Subpoenas.

## BACKGROUND

### I.      The Underlying Actions Filed by HDC

Between May and August of 2019, HDC filed four individual suits in the Southern District of Florida against each of the four Petitioners for allegedly violating Title III.  *See* Second Amended Complaint, *Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-21724 (S.D. Fla. Oct. 27, 2020); First Amended Complaint, *Havana Docks Corp. v. Norwegian Cruise Line Holdings Ltd.*, No. 19-cv-23591 (S.D. Fla. Apr. 16, 2020); Second Amended Complaint, *Havana Docks Corp. v. MSC Cruises (USA) Inc., et al.*, No. 19-cv-23588 (S.D. Fla. Oct. 8, 2020); and Amended Complaint, *Havana Docks Corp. v. Royal Caribbean Cruises Ltd.*, No. 19-cv-23588 (S.D. Fla. Apr. 20, 2020) (all together, the "Underlying Actions").  In each, HDC alleges that it is the owner of a claim to a

port in Havana, Cuba, that was confiscated by the Cuban Government in 1960.  HDC contends that Petitioners "trafficked," as defined in Title III, in that confiscated port property.  Discovery is ongoing in each of the Underlying Actions.  The deadline to complete all fact discovery in the Underlying Actions is May 14, 2021.

## II.   Dr. Garcia-Bengochea and HDC's Lawsuits

Dr. Garcia-Bengochea, although a nonparty, is not unrelated to the Underlying Actions.   Dr. Garcia-Bengochea is an individual who resides and works in Jacksonville, Florida, and claims to be the owner of a claim to a port in Santiago de Cuba, Cuba, that was confiscated by the Cuban Government.  Dr. Garcia-Bengochea, who until recently was represented by the same litigation counsel as HDC, also filed lawsuits against Petitioners under Title III in the Southern District of Florida, two of which are on appeal before the Eleventh Circuit.  *Garcia-Bengochea v. Carnival Corp.*, No. 19-cv-21725 (S.D. Fla. July 10, 2020), *on appeal*, 20-12960 (11th Cir. 2020); *Garcia-Bengochea v. Norwegian Cruise Line Holdings Ltd.*, No. 19-cv-25393 (S.D. Fla. Sept. 1, 2020) (ordering all case deadlines be stayed and the case closed for statistical and administrative purposes pending the *Carnival* appeal); and *Garcia-Bengochea v. Royal Caribbean Cruises Ltd.*, No. 19-cv-23592 (S.D. Fla. Oct. 15, 2020), *on appeal*, 20-14521 (11th Cir. 2020).  Many of the documents and communications produced by HDC in the Underlying Actions show that Dr. Garcia-Bengochea, on behalf of HDC, led efforts to lobby the United States Government for the revocation of cruise lines executives' visas pursuant to Title IV of the Act and for the lifting of the suspension of Title III of the Act.  The purported basis for Dr. Bengochea's lobbying efforts was the very conduct at issue in the Underlying Actions.  Based on this relationship between HDC and Dr. Garcia-Bengochea, Petitioners have reason to believe that Dr. Garcia-

Bengochea has access to, and control over, information relevant to HDC's claim and Petitioners' defenses in the Underlying Actions.  For these reasons, Petitioners issued the Subpoenas in each of the individual Underlying Actions.  *See* Composite Ex. A. Because Dr. Garcia-Bengochea resides, works, and his former counsel accepted service in this District, the Court has jurisdiction to hear this Motion and enforce Petitioners' Subpoenas.

### III.    The Subpoenas, Counsel's Correspondence, and Dr. Garcia-Bengochea's Inadequate Response

The Subpoenas contain substantially similar requests, seeking various documents relevant to the Underlying Actions.  The Subpoenas generally seek documents and communications concerning HDC; the confiscated property in Cuba at issue in the Underlying Actions, including any entity's alleged use of the same; the LIBERTAD Act (the law under which HDC has sued Petitioners in the Underlying Actions); the Certified Claim (as specifically defined in the Subpoenas); and any attempts to seek compensation from any entity for the Certified Claim or use of the confiscated property at issue in the Underlying Actions.  *See* Composite Ex. A. Between December 2020 and January 2021, each Petitioner served its Subpoena on Dr. Garcia-Bengochea's then-counsel Michelle Bedoya Barnett of Alexander DeGance Barnett or Dr. Garcia-Bengochea's counsel Bryan Gowdy of Creed & Gowdy, P.A., who both represented they were authorized to accept service on his behalf.  *See* Composite Ex. A (the Subpoenas); Composite Ex. B (emails accepting service).  Petitioners then conferred with Dr. Garcia-Bengochea's then-counsel Ms. Bedoya Barnett telephonically and electronically to discuss the Subpoenas and the

logistics for the production of electronically stored information.[2]  In connection with those conferrals, Petitioners provided Dr. Garcia-Bengochea's counsel with suggested document repositories, custodians, time periods, and search terms, and agreed to a rolling production of responsive documents to be completed by February 15, 2021.  *See* E-mails from Nathalie M. de Almagro to Michelle Bedoya Barnett (Jan. 25, 4:33 EST; Jan. 29, 2021, 9:53 EST) (attached as Composite Ex. C).  Dr. Garcia-Bengochea's counsel never expressed any concerns about Dr. Garcia-Bengochea's ability to collect all relevant and responsive data.  Indeed, to date, more than two months after service of the Subpoenas, Dr. Garcia-Bengochea has served no objections to the Subpoenas.

After this preliminary correspondence, counsel for Petitioners and Dr. Garcia-Bengochea's counsel did not engage in any communications about the Subpoenas until Dr. Garcia-Bengochea made his deficient production on February 10, 2021.  That day, Dr. Garcia-Bengochea, through counsel, made a production of a single, 907-page PDF that is a combination of a number of different emails and documents and is devoid of any metadata.  The documents and e-mails were not produced to Petitioners in the manner they were "kept in the ordinary course of business" or "organiz[ed] and label[ed] . . . to correspond to the categories" in the Subpoenas.  *See* Fed. R. Civ. P. 45(e)(1)(A).  Moreover, the PDF of 907-pages did not comport with the Subpoenas' specified form for producing electronically stored information.  Also that same day, Dr. Garcia-Bengochea's then counsel sent to Petitioners the following note:

> I wanted to let you all know that the documents produced today were provided to us by our client for production.  Dr. Garcia-Bengochea continues to review his files.  Please direct all follow-up questions to him directly as this Firm will not be representing him going forward.  His e-mail address is . . . I have also copied him to this e-mail.

---

[2]     Instruction number eight to Carnival's Subpoena expressly details the specific metadata that Petitioners sought.  *See* Composite Ex. A.

E-mail from Michelle Bedoya Barnett to Petitioners' counsel (Feb. 10, 2021, 7:48 EST) (attached as Ex. D).

On February 11, 2021, Petitioners contacted Ms. Barnett to explain the deficiencies in Dr. Garcia-Bengochea's production and requested a full and complete production, in response to which Ms. Barnett then instructed Petitioners to direct all requests to Dr. Garcia-Bengochea directly. *See* E-mail from Meredith Schultz to Michelle Bedoya Barnett (Feb. 11, 2021, 10:37 EST) (attached as Ex. E). Each of the Petitioners followed-up with Dr. Garcia-Bengochea accordingly. *See* E-mail from Nathalie M. de Almagro to Dr. Garcia-Bengochea (Feb. 22, 2021, 5:33 EST) (attached as Ex. F); E-mail from Caitlin Saladrigas to Dr. Garcia-Bengochea (Feb. 22, 2021, 12:21 EST) (attached as Ex. G); E-mail from Justin B. Nemeroff to Dr. Garcia-Bengochea (Feb. 19, 2021, 5:47 EST) (attached as Ex. H); E-mail from Meredith Schultz to Dr. Garcia-Bengochea (Feb. 18, 2021, 12:42 EST) (attached as Ex. I).

In an effort to reduce the burden on Dr. Garcia-Bengochea, Petitioners offered to assist with identifying an independent third-party document vendor and to cooperate together to ensure that the data would only need to be collected and reviewed once. *See* Exs. F-I. But Dr. Garcia-Bengochea has refused to remedy his deficient production. On February 24, 2021, Dr. Garcia-Bengochea responded to only two of the cruise line's follow-up correspondence saying nothing more than that he "provided through [his] previous counsel, Michelle Bedoya Barnett, all documents relevant to your requests to the best of my abilities . . . I appreciate your understanding and look forward to answering any questions you may have at my deposition." E-mail from Dr. Garcia-Bengochea to Nathalie M. de Almagro (Feb. 24, 2021, 6:11 EST); e-mail from Dr. Garcia-Bengochea to Nathalie M. de Almagro (Feb. 24, 2021,

9:19 EST) (attached Composite Ex. J).  However, Dr. Bengochea *never* responded to MSC Cruises' or Royal Caribbean's similar follow-up correspondence and has still not done so to date.[3]  Dr. Garcia-Bengochea still has not fully complied with the Subpoenas and has offered no valid reason for failing to do so.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery of non-parties by subpoena.  *See* Fed. R. Civ. P. 45.  Rule  45 permits parties to subpoena non-parties for documents and electronic stored information.  *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). When a non-party fails to comply with a subpoena, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection."  Fed. R. Civ. P. 45(d)(2)(B)(i).  "The scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."  *Fed. Trade Comm'n v. Roca Labs, Inc.*, No. 8:15-CV-2231, 2017 WL 131574, at \*2 n.2 (M.D. Fla. Jan. 13, 2017) (citing Fed. R. Civ. P. 45 advisory committee's note to the 1970 Amendments).  Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).

The party resisting discovery bears the "burden of showing that the requested discovery is not relevant or that its production would be unduly burdensome."  *Mackay v. Creative Hairdressers, Inc.*, No. 3:17-CV-421-J-32MCR, 2018 WL 7457849, at \*1 (M.D. Fla. June 29, 2018) (citation omitted) (denying motion to quash subpoena and for protective order where respondent "[did] not meet its burden of showing that the

---

[3]     Although MSC initially subpoenaed Dr. Garcia-Bengochea for deposition testimony, MSC is in fact only pursuing the production of documents.

requested discovery is not relevant or that its production would be unduly burdensome").

## ARGUMENT

### I.   Dr. Garcia-Bengochea Has Failed to Object to the Subpoenas, and Has Therefore Waived Any Right to Do So

To the extent Dr. Garcia-Bengochea ever had any objections to the Subpoenas, he has clearly waived them.  Federal Rule of Civil Procedure 45 provides that a person subject to subpoena can serve on the requesting party a "written objection," which "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Fed. R. Civ. P. 45(d)(2)(B).  "[A]s a general rule, when a party fails to timely object to interrogatories, production requests, or other discovery efforts, the objections are deemed waived."  *Golden Krust Franchising, Inc. v. Clayborne*, No. 8:20-MC-104-T-33SPF, 2020 WL 7260774, at *1 (M.D. Fla. Dec. 10, 2020) (finding that a non-party subpoena respondent waived her objections to a subpoena by failing to timely object and ordering respondent to produce responsive documents within fourteen days); *see also Stringer v. Ryan*, No. 08-21877, 2009 WL 3644360, at *1 (S.D. Fla. Oct. 30, 2009) ("A non-party waives any objections if she does not timely object to the subpoena."); *Madeline L.L.C. v. Street*, No. 09-80705, 2009 WL 1563526, at *1 (S.D. Fla. June 3, 2009) (holding that the respondent's untimely response to a Rule 45 subpoena resulted in waiver of any objection to the same).

Petitioners served Dr. Garcia-Bengochea with the Subpoenas between December 22, 2020, and January 20, 2021, and agreed to a rolling production of responsive documents to be completed by February 15, 2021.  Thus, the latest date Dr. Garcia-Bengochea could have served objections – fourteen days following the last

service date, January 20, 2021 – was February 3, 2021.  *See* Fed. R. Civ. P. 45(d)(2)(B).

It is now April 2021, and Dr. Garcia-Bengochea has failed to serve any written

objections to any of the Subpoenas.  Rather, Dr. Garcia-Bengochea has simply refused

to adequately comply with them.

Given that Dr. Garcia-Bengochea has waived any objection he has to the

Subpoenas, the Court should order him to fully comply by ordering the production of

all documents and communications, including their metadata, requested in the

Subpoenas in the form that they are kept in the ordinary course of business organized

and labeled to correspond to which specific document requests they relate.

## II.   The Court Should, in Any Event, Compel Dr. Garcia-Bengochea to Produce the Requested Documents and Information Because They Are Relevant and Responsive to Petitioners' Subpoenas

The Subpoenas are directed to material issues relevant to HDC's claims and

Petitioners' defenses.  "Relevance is 'construed broadly to encompass any matter that

bears on, or that reasonably could lead to other matters that could bear on, any issue

that is or may be in the case.'"  *S.E.C. v. Rex Venture Group, LLC*, No. 5:13-MC-004,

2013 WL 1278088, at *3 (M.D. Fla. Mar. 28, 2013) (quoting *Oppenheimer Fund, Inc. v.

Sanders*, 437 U.S. 340, 351 (1978)).  Accordingly, a discovery request "should be

considered relevant if there is any possibility that the information sought may be

relevant to the subject matter of the action."  *Id.* (citations omitted).

Petitioners have sought generally four categories of documents and/or

communications from Dr. Garcia-Bengochea:  (1) all documents provided to and

communications with HDC and its principals, shareholders, or agents; (2) all

communications with the United States Government concerning HDC, the

confiscated property in Cuba at issue in the Underlying Actions, including any entity's

11

alleged use of the same, the LIBERTAD Act (the law under which HDC has sued Petitioners in the Underlying Actions), and the Certified Claim (as specifically defined in the Subpoenas), as well as communications with any other third-parties concerning the same subjects; and (3) all documents, including communications, referring to attempts to seek compensation from any entity for the Certified Claim or use of the confiscated property at issue in the Underlying Actions.[4]  *See* Composite Ex. A.

Petitioners' requests are narrow in scope and limited to obtaining evidence that is relevant to HDC's claim against Petitioners and Petitioners defenses to the same. The Subpoenas seek documents that are relevant to whether Dr. Garcia-Bengochea was at relevant times acting as HDC's agent.  The relationship that exists and/or existed between Dr. Garcia-Bengochea and HDC is a contested fact, with HDC at times claiming a common-interest relationship with Dr. Garcia-Bengochea and at other times testifying that "Dr. Garcia[-Bengochea] was never an agent of Havana Docks."  Havana Docks Corp. Dep. 229:23-229:24, Dec. 8, 2020 (attached as Ex. K). Dr. Garcia-Bengochea's deficient production to each of the cruise lines shows that Dr. Garcia-Bengochea did not always copy or otherwise include HDC's officers in his communications to the United States government that were nonetheless made on HDC's behalf.  For example, in an email produced by HDC dated April 23, 2017, from Dr. Garcia-Bengochea to HDC's president, Mickael Behn, Dr. Garcia-Bengochea shares that a "State Dept lawyer specifically ***told [him]*** they viewed docking on ***our property*** as "necessary" and so they wouldn't consider it trafficking."  HDC 001328 (emphasis added) (attached as Ex. L).  By refusing to conduct a reasonable

---

[4]      Norwegian asked for one additional category of documents: documents sufficient to identify all payments made and received by Dr. Garcia-Bengochea related to efforts to enforce terms of the Helms-Burton Act.

search and complete production of responsive documents, Petitioners are thus being deprived of documents not in HDC's possession and that are relevant to whether he was acting as HDC's agent in seeking the enforcement of penalties under the Act against Petitioners.  Accordingly, Dr. Garcia-Bengochea should be compelled to remedy his deficient production because the information sought is relevant to determining at what times he was acting as HDC's agent.  *See Bortolus v. Magical Cruise Co. Ltd.*, No. 607CV1864ORL18GJK, 2009 WL 10713044, at *7 (M.D. Fla. Feb. 17, 2009) (granting motion to compel where the information sought was relevant to whether an entity was an agent or not).

Moreover, the requests relate to HDC's ownership of the Certified Claim and the property in which Petitioners are alleged to have trafficked.  The metadata that Petitioners have yet to receive is also relevant to the analysis of whether HDC's principal place of business is in the United States such that it has standing to bring the Underlying Actions.  Additionally, communications with the United States Government also relates to Petitioners' defense that any alleged use of confiscated property was incident to lawful travel to Cuba and necessary to the conduct of such travel.  *See* 22 U.S.C. § 6023 (13)(B)(iii).  Thus, each of these requests concern the very topics at issue in the Underlying Actions.  Indeed, Dr. Garcia-Bengochea has conceded the relevance of the requests by serving no written objections to the Subpoenas.

In sum, the subpoenaed documents and information are directly relevant to HDC's Title III trafficking claim against each of the Petitioners and Petitioners' respective defenses thereto, including Petitioners' defense that any use of confiscated property was incident and necessary to lawful travel.

### III.   The Subpoenas Do Not Impose Any
###        <u>Undue Burden or Expense on Dr. Garcia-Bengochea</u>

The Subpoenas do not subject Dr. Garcia-Bengochea to undue burden or expense, and here Petitioners have coordinated to take all reasonable steps to minimize any burden or expense whatsoever.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iv).  Namely, Petitioners voluntarily coordinated to issue substantially similar subpoenas that together request a total of four categories of documents that are relevant to HDC's Title III claim and Petitioners' respective defenses.  *See* Composite Ex. A.  Moreover, Petitioners have offered to provide Dr. Garcia-Bengochea with the contact information of an independent third-party vendor that can collect the data remotely from Dr. Garcia-Bengochea and process it only once in response to the four Subpoenas.  *See* Exs. F-I.  Likely for these reasons, Dr. Garcia-Bengochea has not actually served any objection concerning burden or expense.  Nor has Dr. Garcia-Bengochea provided any evidence that searching for, collecting, and producing the additional documents responsive to the Subpoenas would constitute such undue burden or expense.

Moreover, even where a significant expense is associated with compliance with a subpoena (which here there is not), courts have found such burden to be justified – that is, not "undue" – when the nonparty "was substantially involved in the underlying transaction, and should have reasonably anticipated being drawn into subsequent litigation." *In re Seroquel Products Liab. Litig.*, No. 06MD1769ORL22DAB, 2007 WL 4287676, at *3 (M.D. Fla. Dec. 6, 2007).  Here, given Dr. Garcia-Bengochea's

numerous communications on behalf of HDC and with HDC principals, his involvement in HDC's subsequent litigation was virtually assured. *See In re Seroquel Products Liab. Litig.*, 2007 WL 4287676, at *4 (holding that a third-party vendor that did market research related to the prescription drug at issue in the underlying action was to bear the costs retrieving and reviewing the subpoenaed documents because he "should have reasonably anticipated being involved in the discovery process of subsequent litigation concerning the marketing/prescribing behavior it studied for [the drug]"). Until on or about November 2020, Dr. Garcia-Bengochea was represented by the same lawyers who are counsel of record for HDC in the Underlying Actions. Thus, it should be of no surprise to Dr. Garcia-Bengochea that he was going to be subpoenaed in the Underlying Actions, as his voluntary involvement in the underlying circumstances make him more akin to a party than a stranger to the Underlying Actions. Thus, there is no basis to find that the Subpoenas impose an undue burden or expense.

### CONCLUSION

For the foregoing reasons, Petitioners respectfully request the Court enter an Order (1) granting Petitioners' Motion, (2) finding that Dr. Garcia-Bengochea has waived all objections to the Subpoenas, (3) requiring that Dr. Garcia-Bengochea produce all documents (with their associated metadata) responsive to the Subpoenas, and (4) granting Petitioners such further and additional relief the Court deems just and proper.

## <u>LOCAL RULE 3.01(G) CERTIFICATION</u>

Pursuant to Middle District of Florida Local Rule 3.01(g), we hereby certify that counsel for Petitioners has conferred with Dr. Garcia-Bengochea via electronic correspondence, in a good faith effort to resolve this issue and has been unable to do so.  Dr. Garcia-Bengochea opposes the Motion.

Dated:  April 23, 2021

Respectfully submitted,

| | |
|---|---|
| HOGAN LOVELLS US LLP<br>600 Brickell Avenue<br>Suite 2700<br>Miami, FL 33131<br>305-459-6500 – Telephone<br>305-459-6550 – Facsimile | BOIES SCHILLER FLEXNER LLP<br>401 East Las Olas Boulevard<br>Suite 1200<br>Fort Lauderdale, Florida 33301<br>Telephone: (954) 356-0011 |

BOIES SCHILLER FLEXNER LLP
401 East Las Olas Boulevard
Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011

By:    */s/ Stuart H. Singer*
      Stuart H. Singer
      (Florida Bar No. 377325)
      ssinger@bsfllp.com
      Meredith Schultz
      (Florida Bar No. 29536)
      mschultz@bsllp.com
      Corey P. Gray
      (Florida Bar No. 0115473)
      cgray@bsfllp.com

HOGAN LOVELLS US LLP
600 Brickell Avenue
Suite 2700
Miami, FL 33131
305-459-6500 – Telephone
305-459-6550 – Facsimile

By:    */s/ Allen P. Pegg*
      Richard C. Lorenzo
      Fla. Bar No. 071412
      richard.lorenzo@hoganlovells.com
      Allen P. Pegg
      Fla. Bar No. 597821
      allen.pegg@hoganlovells.com

*Counsel for Norwegian Cruise Line Holdings Ltd.*

Pedro A. Freyre
AKERMAN LLP
(Florida Bar No. 192140)
98 SE 7th St., Suite 1100
Miami, Florida 33131
Telephone: (305) 374-5600
Pedro.freyre@akerman.com

George J. Fowler, III
(*Pro Hac Vice*)
Luis Llamas
(Florida Bar No. 89822)
JONES WALKER LLP
201 St. Charles Ave.
New Orleans, LA 70170
Telephone: (504) 582-8752
gfolwer@joneswalker.com
llamas@joneswalker.com

    *Counsel for Carnival Corporation*


HOLLAND & KNIGHT LLP
701 Brickell Avenue
Suite 3300
Miami, Florida 33131
(305) 374-8500 (telephone)
(305) 789-7799 (facsimile)


By:    */s/ Scott D. Ponce*
       Sanford L. Bohrer (FBN 160643)
       Scott D. Ponce (FBN 0169528)
       Caitlin F. Saladrigas (FBN 95728)
       Benjamin Taormina (FBN 106731)
       Email:sbohrer@hklaw.com
       Email: sponce@hklaw.com
       Email: caitlin.saladrigas@hklaw.com
       Email:benjamin.taormina@hklaw.com

    *Counsel for Royal Caribbean*

VENABLE LLP
600 Massachusetts Avenue
Washington, D.C. 20001
T:  (202) 344-4703
F:  (202) 344-8300


By:    */s/ J. Douglas Baldridge*
       J. Douglas Baldridge
       (Florida Bar No. 708070)
       JBaldridge@venable.com


*Counsel for MSC Cruises (USA) Inc.,*
*MSC Cruises SA CO., and MSC*
*Cruises S.A.*